```
          IN THE UNITED STATES DISTRICT COURT
          FOR THE NORTHERN DISTRICT OF ILLINOIS
                    EASTERN DIVISION
```

| | |
|---|---|
| **EVERYTHING BASEBALL,** | ) |
| Plaintiff, | ) |
| v. | ) No. 08 C 3840 |
| **WILSON SPORTING GOODS COMPANY, WILSON HUNT INTERNATIONAL LTD., SCHUTT SPORTS, INC., EASTON-BELL SPORTS, INC., HILLERICH & BRADSBY Co., AMPAC ENTERPRISES, INC., RAWLINGS SPORTING GOODS, INC., ADIDAS AMERICA, INC., REEBOK INTERNATIONAL LTD., RIDDELL SPORTS, INC., DIAMOND SPORTS CO., INC., and NOCONA ATHLETIC GOODS COMPANY,** | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Everything Baseball, the assignee of U.S. Patent No. 6,161,226 (the "'226 patent" or the "patent-in-suit"), sued the above-named defendants for patent infringement, alleging that they sell baseball chest protectors that infringe the '226 patent. Defendants Wilson Sporting Goods, Ampac Enterprises, Easton-Bell Sports, Hillerich & Bradsby, Wilson Hunt International, Rawlings Sporting Goods, Schutt Sports, Riddell Sports,[1] and Adidas America (collectively, "defendants") have moved for summary judgment on the

---

[1] Defendant Riddell was dismissed from the lawsuit after the motion was filed, but its name continues to appear on briefs filed on defendants' behalf. Defendants Reebok, Diamond, and Nocona have also been dismissed.

ground that the '226 patent is invalid as anticipated by three prior art references: U.S. Patent No. 5,530,966 (the '966 patent) issued to Joseph West; a chest protector manufactured and sold by Douglas, which embodies the '966 patent, and the "hang tag" attached to a chest protector manufactured and sold by Wilson under the trade name West Vest, which also embodies the '966 patent (collectively, the "West references"). For the reasons discussed below, defendants' motion is denied.

I.

Summary judgment is proper where the record shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Boumehdi v. Plastag Holdings, LLC*, 489 F.3d 781, 787 (7th Cir. 2007); FED. R. CIV. P. 56(c). I must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Although patent claims are presumed valid, that presumption can be overcome--and the claims invalidated as "anticipated"--where clear and convincing evidence shows that the claimed subject matter was previously described in a single prior art reference. *Sanofi-Synthelabo v. Apotex, Inc.*, 550 F.3d 1075, 1082 (Fed. Cir. 2008); *Panduit Corp. v. Dennison Mfg. Co.*, 810 F.2d 1561, 1575 (Fed. Cir. 1987) (clear and convincing standard). "To anticipate, a single

2

reference must teach every limitation of the claimed invention." *Cohesive Technologies, Inc., v. Waters Corp.*, 543 F.3d 1351, 1364 (Fed. Cir. 2008) (quoting *MEHL/Biophile Int'l Corp. v. Milgraum*, 192 F.3d 1362, 1365 (Fed. Cir. 1999)). Anticipation is a question of fact. *Sanofi-Synthelabo*, 550 F.3d at 1082; *Eolas Technologies Inc., v. Microsoft Corp.*, 399 F.3d 1325, 1332 (Fed. Cir. 2005).

The parties agree that to anticipate the '226 patent, at least one of the West references must demonstrate all of the following limitations: "a flexible main pad having...an abdomen portion"; "a flexible shoulder guard" that extends "over the shoulder of a wearer"; and "adjustable straps attached at one end to the abdomen portion of the main pad." The parties also generally agree on the structure of the West references. Nevertheless, the parties' positions on whether these references disclose the aforementioned limitations are diametrically opposed: defendants assert that *each* West reference demonstrates *all* of the limitations, while plaintiff argues that *none* of the references contains *any* of them. I need not examine all of these disputes, however, because even a single material dispute relating to each of the references is sufficient to deny summary judgment.

II.

## 1. The Douglas chest protector

After viewing, handling, and observing the Douglas embodiment[2] of the '966 patent as worn by a law clerk, I am not persuaded that this reference indisputably contains "an abdomen portion" as required by the '226 patent. When worn in what appears to be the proper position (as I assume was the case in the photographs defendants submitted in support of their motion), the Douglas chest protector comes down to just below the sternum, i.e., several inches above the navel, leaving a large portion of the abdomen exposed.[3] I am thus baffled by defendants' contention that it is "self-evident from just looking at" this reference that it has an abdomen portion. At the very least, whether the Douglas chest protector contains an abdomen portion is a question of fact for the jury. Accordingly, the Douglas chest protector does not anticipate the patent-in-suit as a matter of law.

## 2. The '966 Patent

I am also not persuaded that the '966 patent indisputably

---

[2]Defendants submitted two Douglas embodiments to my chambers but refer only to one of these in their brief. My comments here apply to both of the embodiments I viewed.

[3]A search on www.dictionary.com reveals a citation to the Random House Dictionary 2009 edition, which defines "abdomen" as "the part of the body of a mammal between the thorax and the pelvis; belly." *Available at* http://dictionary.reference.com/browse/abdomen (last accessed April 21, 2009).

contains "a flexible main pad." Defendants concede that the '966 patent discloses a protective garment with an outer shell layer of plastic plates (which both the specification and the claims of that patent describe as "stiff"), but they argue that the invention is nevertheless "flexible" because 1) the inner portion of the garment is flexible, which satisfies the requirement that the reference contain a "flexible main pad," and 2) the assembly taken together is flexible because the plastic plates of the outer shell are themselves flexible and, in any event, are hingedly linked so as to be capable of folding when disassembled from the inner portion.

To set the stage for their first argument, defendants characterize the plates as "separate components added to the flexible inner pad," then argue that the presence of "additional" features (i.e., the external plastic plates) in the '966 patent do not diminish the reference's satisfaction of the "flexible" limitation in the asserted claim. But it is not the "inner pad" that must be flexible according to the claim; it is the "main pad." I share plaintiff's skepticism that the term "main pad" can be construed as referring to the "inner pad" (rather than to the assembly of the inner and outer portions), which is how the phrase would have to be interpreted for defendants' argument to win the day. Defendants are correct that the transition "comprising" (which precedes the limitation "a flexible main pad") typically suggests an open-ended claim, *Crystal Semiconductor Corp. v. TriTech*

*Microelectronics Int'l, Inc.*, 246 F.3d 1336, 1348 (Fed.Cir. 2001), and that provided all limitations of the patent-in-suit are present in a prior art reference, the presence of "additional" features in the prior art reference does not undermine its satisfaction of the criteria for anticipation.[4] If the claim language read, for example, "a main pad comprising a flexible inner pad," defendants might have a point, since a "main pad" having both a flexible inner pad and inflexible outer plates would presumably satisfy the limitation as written. The asserted claim, however, recites "a flexible main pad," and a reasonable interpretation of this language is that the main pad must be "flexible" when all of its components are considered together.

This brings me to defendants' second argument, which is that even if the inner and outer layers of the chest protector disclosed in the '966 patent are considered collectively to be the "main pad," the assembly still meets the requirement of the '226 patent that the chest protector be "flexible." I cannot decide this

---

[4] Defendants cite two unreported cases from other circuits in support of this proposition, *Powdermagic, Ltd. v. Rossignol Ski Co.*, 2005 WL 3981617 at *6 (D. Utah 2005) and *Mossman v. Broderbund Software, Inc.*, 1999 WL 696007 at *8 (E.D. Mich. 1999). Although these authorities obviously are not binding, the holding for which they are cited is consistent with the test the Federal Circuit applies to determine whether a claim is anticipated: "that all of the elements and limitations of the claim are described in a single prior art reference." *Hakim v. Cannon Avent Group, PLC*, 479 F.3d 1313, 1919 (Fed. Cir. 2007) (citing *Akzo N.V. v. U.S. Int'l Trade Comm'n.*, 808 F.2d 1471, 1479 (Fed. Cir. 1986). In any event, plaintiffs agree that "whether the prior art has additional elements is irrelevant" to the anticipation analysis.

question as a matter of law, despite the parties' agreed-upon construction of the term "flexible" as meaning "capable of being bent or flexed." As to the first prong of defendants' argument (that the plastic plates are themselves flexible), most any material is capable of being bent or flexed if sufficient pressure is exerted (indeed, even steel structures such as buildings and bridges are engineered to be flexible enough to withstand the pressures of wind and earthquakes, for example). That some amount of pressure will cause the plastic plates to bend or flex thus does not compel the conclusion that the plates are "flexible" as that term is used in the patent-in-suit. Moreover, the '966 patent repeatedly describes the plastic plates used in the invention as "stiff." Defendants point out that the '226 patent itself also contemplates the use of plastic for the "outer casing" of the main pad. Unlike the '966 patent, however, which specifically describes the plastic plates used for the outer portion of the garment as "stiff," there is nothing in the patent-in-suit to suggest that the invention contemplates the use of "stiff" outer material in the "flexible main pad." The disclosure states only that the outer layer "may be made of any suitable material, such as fabric or plastic." In light of the overall requirement that the main pad be flexible, a reasonable interpretation of this language is that it contemplates the use of malleable, rather than "stiff" plastic for the outer casing. In sum, defendants have not demonstrated, as a

7

matter of law, that the plastic plates of the '966 patent are "flexible" as that term is used in the patent-in-suit.

This leaves the second prong of defendants' second argument: that the assembly of the inner and outer portions of the invention embodied in the '966 patent is "flexible" because the "stiff" outer plates are "hingedly connected by flexible straps." This issue also cannot be resolved as a matter of law. Plaintiff and defendants point to the same portion of the '966 disclosure in support of their respective positions: a passage that discusses the relationship among the various plastic plates. The relevant text describes an embodiment of the '966 patent in which the plastic plates are connected by "flexible straps" that "afford hinge-like displacement of the associated plate elements about a hinge axis." In addition, the description specifies that "the straps are of a width and stiffness so as to resist flexing of the straps except along the hinge axis." Unsurprisingly, plaintiff focuses on the "...of a width and stiffness so as to resist flexing..." portion of this excerpt, while defendants emphasize the "except along the hinge axis" portion, which they say "directly contradicts" plaintiff's argument that the invention in the '966 patent is "rigid."

Defendants' argument fails because even assuming the presence of flexible hinges means the exterior shell cannot accurately be characterized as "rigid," reasonable minds can differ as to whether

8

the ability of the stiff plastic plates to be "displaced" about their axes--but not in any other direction--satisfies the requirement that the main pad be "flexible" as that term is used in the patent-in-suit. A reasonable interpretation of "flexible" as used in the '226 patent is that the main pad must be flexible in various directions, not merely among a particular axis or axes.[5] Indeed, such an interpretation would support the patent-in-suit's stated object of protecting a catcher "without restricting the catcher's mobility," which presumably is not limited to movement along the axes formed by the interconnected plates. In other words, the hinged movement among the stiff plastic plates disclosed in the '966 patent may render the invention non-rigid without rendering it "flexible" as that term is used in the '226 patent.

For at least these reasons, the '966 patent does not anticipate the patent-in-suit as a matter of law.

### 3. The Wilson West Vest "Hang Tag"

The final reference upon which defendants rely is the Wilson "hang tag," which, as far as I can tell, is the tag attached to the product when it is sold commercially to consumers. This reference depicts images of the product from the front, back and side, and identifies its "individual parts." These drawings and descriptions are insufficient to demonstrate anticipation of the patent-in-suit

---

[5]This interpretation is not inconsistent with the agreed-upon construction of "flexible" as "capable of being bent or flexed."

as a matter of law.

    First of all, other than identifying what appears to be the inner layer of the garment as the "soft underpad," there is no evidence that any or all of the portion of the West Vest corresponding to the "main pad" of the '226 patent is "flexible." The front view drawing depicts and identifies the following parts: collar plates; collar roll; shoulder cup; bicep pad; side chest plates; breast plate; sternum plate; soft underpad; "T" hooks; and "T" hook slots. (I note in passing that no "abdomen plate" is identified, and the extent to which the "sternum plate" descends below the sternum when worn is not ascertainable from the drawing.) It is not clear from the picture whether certain of these parts are overlapping or adjacent. I cannot discern, for example, whether the portion identified as the "breast plate" overlaps with the parts identified as "side chest plates," or whether one of these plate ends where the other begins. Moreover, nothing tells me the extent to which the "plate" components are themselves flexible or stiff, or how they are connected to one another, if at all. For at least these reasons, I cannot conclude as a matter of law that the Wilson "hang tag" anticipates the patent-in-suit.

III.

For the foregoing reasons, defendants' motion for summary judgment is denied.

**ENTER ORDER:**

_____

**Elaine E. Bucklo**
United States District Judge

Dated: May 4, 2009